IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ADOLFO LOPEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-00571-BH |
| | § | |
| CAROLYN W. COLVIN | § | |
| Acting Commissioner of | § | |
| Social Security, | § | |
| | § | |
| Defendant. | § | Consent Case |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pursuant to the consent of the parties and the order of transfer dated April 24, 2014, this case has been transferred for the conduct of all further proceedings and the entry of judgment. Before the Court are *Plaintiff's Brief in Support of Claim*, filed July 22, 2014 (doc. 23), and *Defendant's Reply Brief*, filed August 20, 2014 (doc. 24). Based on the relevant filings, evidence, and applicable law, the Commissioner's decision is **REVERSED,** and the case is **REMANDED** for further administrative proceedings.

**I. BACKGROUND**[1]

A. <u>Procedural History</u>

Adolfo Lopez Gutierrez (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits under Title II of the Social Security Act. (R. at 15, 145.) On January 27, 2011, Plaintiff applied for

---

[1] The background information comes from the transcript of the administrative proceedings, which is designated as "R."

disability insurance benefits, alleging disability beginning on February 20, 2009, due to his spinal impairments, obesity, and anxiety.  (R. at 18.)  His application was initially denied on June 6, 2011, and upon reconsideration on August 19, 2011.  (R. at 74–78, 81–84.)  Plaintiff requested a hearing before an administrative law judge (ALJ) on September 16, 2011, and subsequently appeared and testified at a hearing held on October 1, 2012.  (R. at 15, 36–50, 85–86.)  On November 2, 2012, the ALJ issued his decision finding Plaintiff not disabled.  (R. at 9–28.)   The Appeals Council denied his request for review on December 19, 2013, making the ALJ's decision the final decision of the Commissioner.  (R. at 1–8.)  Plaintiff timely appealed the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## B.  <u>Factual History</u>

### 1.  **Age, Education, and Work Experience**

Plaintiff was born in 1966.  (R. at 36.)  At the time of the hearing before the ALJ, he was 46 years old and had completed the sixth grade in Mexico.  (R. at 37.)  He cannot speak or understand English.  (R. at 167.)  His past relevant work experience from 1997 to 2010 involved construction and general labor, including painting, roofing, and carpeting.  (R. at 36, 50, 223.)

### 2.  **Medical Evidence**

In July 2001, after injuring his back while bending and lifting at work, Plaintiff underwent a diskectomy and anterior fusion at L4–L5 and L5–S1.[2]  (R. at 228, 232.)  During surgery, Dr. Paul Vaughn, M.D., inserted a device and screws on the right side of Plaintiff's spine to bridge together

---

[2] A diskectomy is the surgical removal of all or part of the cushion that helps support part of the spinal column.  U.S. NAT'L LIBR. OF MED., *available at* http://www.nlm.nih.gov (last visited Mar. 19, 2015).  A spinal fusion is a surgery to permanently join together two or more vertebrae in the spine so there is no movement between them.  *Id.*

L4 and S1.  (R. at 250.)  Shortly after that surgery, Plaintiff experienced pain that forced him to stop working.  (R. at 36, 232.)

In January 2006, Plaintiff began self-employment as a construction worker, which primarily involved remodeling and performing general labor.  (R. at 169, 180.)  He completed part-time construction jobs that did not require heavy lifting or bending.  (R. at 233.)  Over the next three years, Plaintiff's pain slowly increased until he experienced low back pain on a daily basis.  (R. at 232.)  On February 20, 2009, Plaintiff quit working due to sharp pains that extended from his back to his legs and caused numbness, tingling, frequent headaches, stomach pains, fatigue, and anxiety. (R. 168, 180, 259.)

On March 25, 2011, Dee L. Martinez, M.D., DABR, of North Texas Imaging, performed spinal X-rays that revealed Plaintiff's status post remote diskectomy and anterior interbody fusion at L4–L5 and L5–S1 and minimal degenerative spondylosis at L1–L2 and L3–L4.  (R. at 235.)

The following day, on March 26, 2011, consultative examiner, Kelley Davis, D.O., reviewed Plaintiff's X-rays.  (*Id.*)  She affirmed Dr. Martinez's diagnosis and observed "no lumbrosacral spine fracture or dislocation" and a minimal degree of degenerative spondylosis at L1-L2.  (*Id.*)  Dr. Davis also performed an exam for Disability Determination Services (DDS) and found that Plaintiff suffered from chronic low back pain.  (R. at 232, 234–35.)  During the exam, Dr. Davis focused on Plaintiff's musculoskeletal region, determining that Plaintiff's muscle strength measured 5/5 in the upper left and upper right extremities, 4/5 in the bilateral quadriceps and hamstrings, and 4/5 in the bilateral calves.  (*Id.*)  Plaintiff experienced low back pain but was able to partially squat, use his hands, and take off his shoes and socks without difficulty.  (*Id.*)  Plaintiff also demonstrated "some difficulty lying flat and rising from lying to sitting."  (*Id.*)  Dr. Davis noted that Plaintiff suffered

3

from headaches one to three times per week, but they went away with Tylenol and rest.  (R. 232.)

On October 26, 2011, Plaintiff visited Anamekwe Kenechim, M.D., at Parkland Health & Hospital System (Parkland).  Dr. Kenechim noted low back pain and "pain shooting down both legs with some tingling." (R. at 254.)  Plaintiff explained that rest was an alleviating factor, and bending forwards was an exacerbating factor.  (*Id.*)  He took ibuprofen for his pain.  (*Id.*) Dr. Kenechim prescribed three medications: Naprozen (500 mg tablet), Cyclobenzaprine (10 mg tablet), and Gabapentin (300 mg tablet).  (R. at 255.)

The following day, on October 27, 2011, Geral W. Dietz, M.D., of Parkland, reviewed Plaintiff's X-rays, determining that the device inserted in his back in July 2001 caused "right lateral posterior fusion" and "osseous fusion of L4–L5 and L5–S1." (R. at 250.)  On November 16, 2011, Anthony R. Whittemore, M.D. and Ph.D., of Parkland, performed computerized tomography (CT) scans of Plaintiff's lumbar spine.  The scans reflected no identifiable fractures or other significant bony lesions, no appreciable spinal stenosis, unremarkable paraspinous soft tissues, and no evidence of hardware failure or loosening.  (R. at 251.) He concurred with Dr. Dietz's review on October 27, 2011, and diagnosed "[a]nterior and posterior fusion L4–S1 with posterior hardware and anterior bone graft" and "multilevel mild lumbar spine degenerative changes."  (R. at 251.)

On January 24, 2012, Michael J. Bolesta, M.D., of Parkland's Orthopedic Clinic, found that Plaintiff "could tiptoe and heel walk with minimal difficulties", had muscle strength of 5/5 in upper and lower extremities with gross intact sensation throughout, and "had full range of motion of both cervical and lumbar spines."  However, Plaintiff experienced "tenderness over his lower lumbar segments."  (R. at 260.)  After reviewing the CT scans performed by Dr. Whittemore, Dr. Bolesta identified "disk generation L3–4 and broad-based disk protrusion L2–L4 with bilateral facet

hypertrophy, bilateral foraminal stenosis and minimal central canal stenosis L3–4." (*Id.*) Dr. Bolesta discussed referring Plaintiff to the Pain Management Clinic to receive injections or explore surgical intervention. (*Id.*)

On May 18, 2012, Plaintiff visited Sunti S. Srivathanakul, M.D., of Parkland, reporting back pain and difficulty moving. (R. at 262.) Plaintiff explained that Naprosyn was "not helping," and Dr. Srivathanakul prescribed Relafen/Tizanidine. (R. at 263.)

Three months later, on August 22, 2012, Plaintiff visited Parkland with back pain. (R. at 268.) According to Dr. Srivathanakul, Plaintiff appeared anxious. (*Id.*) Plaintiff mentioned "being a worrier" and that his state was "getting worse." (*Id.*) Dr. Srivathanakul diagnosed Plaintiff with "unspecified anxiety" and referred him to the Pain Management Clinic for injections. (R. at 18, 269.)

### 3. Hearing Testimony

On October 1, 2012, Plaintiff and a vocational expert (VE) testified at a hearing. (R. at 15.) Plaintiff was represented by an attorney, and a Spanish interpreter was present. (*Id.*)

#### a. *Plaintiff's Testimony*

Plaintiff testified that he was 46 years old, married, and lived with his wife and nineteen-year-old son. (R. at 36–37.) He weighed about 187 pounds and was 5'4". (R. at 40.) Before arriving in the United States around 1980, Plaintiff earned a sixth grade education in Mexico. (R at 37.) Since moving to the United States, Plaintiff had worked in construction, specifically carpentry, roofing, and painting. (R. at 37, 50.) He reported being unemployed since 2010 or 2011. (R. at 37.)

Plaintiff filed for disability insurance benefits after experiencing sharp pain in his back, legs,

arms, shoulders, and hips, that prevented him from lifting and bending at work.  (R. at 38.)  The pain

originated from a work-related accident in 2001 that required back surgery.  (*Id.*)  Plaintiff explained

that surgery alleviated some pain but failed to completely eliminate it.  (*Id.*)  From 2001 to 2010,

due to lack of insurance and other financial reasons, Plaintiff did not visit a doctor regarding his

lower back pain.  (*Id.*)  His pain continually increased until he was forced to stop working in 2010.

(*Id.*)

Plaintiff reported that his back pain was a 9/10.  (R. at 44.)  He explained that he could walk

about two blocks, stand for about fifteen minutes, and sit for about fifteen to twenty minutes before

requiring rest.  (R. at 46.)  When asked how much weight he could lift from a seated position,

Plaintiff responded that he could lift ten to fifteen pounds.  (*Id.*)  When asked how much weight he

could lift from a standing position, Plaintiff did not provide an exact weight but described his pain

as "tremendous."  (R. at 47.)  Plaintiff explained that he could "do a little bit of house chores" but

needed assistance putting on his shoes, and he was unable to perform yard work or vacuum.  (*Id.*)

Plaintiff stated that his prescription pain medication temporarily alleviated his back and leg

pain.  (R. at 43.)  While effective, his medication also caused side effects, such as sleepiness,

dizziness, and stomach pains.  (R. at 40.)  Because of these side effects, Plaintiff had difficulty

driving.  (*Id.*)

### b.   *The VE's Testimony*

A VE also testified at Plaintiff's hearing.  (R. at 51–57.)  He characterized Plaintiff's prior

job as a "construction laborer" as heavy in exertion and semi-skilled.  (R. at 53.)  Based on

Plaintiff's age, education, and work experience, he explained that Plaintiff could not perform past

relevant work or perform "very heavy or heavy work."  (*Id.*)

The ALJ asked the VE to opine whether a hypothetical person of Plaintiff's age, education, and work experience could perform work with the following limitations: occasionally lift 20 pounds; frequently lift 10 pounds; and stand or walk for 6 hours in an 8 hour work day.  (*Id.*)  He opined that the hypothetical person could not perform Plaintiff's past relevant work, but could perform light, simple work existing in significant numbers in the local and national economy such as a racker (DOT # 524.687-018, SVP:1), bottling line attendant (DOT # 920.687-042, SVP:1), or bagger (DOT # 920.687-018, SVP:1).  (R. at 53–54.)  He also opined that the hypothetical person could not perform any of these jobs if he suffered from dizziness, nervousness, or other psychological symptoms that prevented him from working on a frequent basis. (R. at 55–56.)

The ALJ also asked the VE whether a hypothetical person of Plaintiff's age, education, and work experience who suffered from back pain, took pain medication, and required "rest after 15 to 20 minutes of either standing or sitting" could perform Plaintiff's past relevant work.  (R. at 55.) He responded that the hypothetical person could neither perform Plaintiff's past relevant work nor any substantial gainful activity.  (*Id.*)

Plaintiff's attorney asked the VE to assume whether a hypothetical person of Plaintiff's age, education, and work experience could occasionally lift 20 pounds, frequently lift 10 pounds, and stand or walk for less than 6 hours in an 8 hour work day could perform Plaintiff's past relevant work. (R. at 57.)  He opined that the hypothetical person could neither perform light work nor any substantial gainful work.  (*Id.*)

Assuming Plaintiff's age, education, and work experience, the VE found that Plaintiff could not perform jobs that required a regular, sustained, or ongoing presence.  (R. at 56.)  Additionally, he concluded that Plaintiff's depression and depression medication prevented him from performing

any substantial gainful work activity.  (R. at 57.)

## C.  **The ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on November 2, 2012.  (R. at 15–24.)  At step 1, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, and had not engaged in substantial gainful activity since the alleged onset of disability, February 20, 2009.  (R. at 15.)  At step 2, he found that Plaintiff suffered from two severe impairments: (1) status post diskectomy and anterior fusion and (2) anxiety.  (R. at 18.)  At step three, he determined that Plaintiff had no impairment, or combination of impairments, that met or equaled the requirements of any listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (*Id.*)  He also found that the intensity and persistence of Plaintiff's subjective complaints were not fully credible.  (R. at 21.)  He next determined that Plaintiff retained the RFC to perform a limited range of light work.  (R. at 20.)  He found that he could lift 20 pounds occasionally and 10 pounds frequently; sit, walk, or stand for approximately 6 hours in an 8 hour workday; frequently crawl, kneel, and balance; and occasionally crouch, stoop, and climb ramps, stairs, ladders, ropes, or scaffolds.  (*Id.*)  At step 4, he determined that these limitations prevented Plaintiff from performing his past relevant work.  (R. at 22.)

At step five, with the assistance of VE testimony, the ALJ found that Plaintiff could perform other work existing in significant numbers in the national economy.  (*Id.*)  He found that Plaintiff would be able to perform the requirements of light, unskilled occupations such as a racker, with 4,500 jobs in Texas and 52,000 in the national economy; bottling line attendant, with 4,200 jobs in Texas and 82,000 in the national economy; and bagger, with 4,000 jobs in Texas and 80,000 in the national economy.  (R. at 23.)  Accordingly, the ALJ found that Plaintiff was not disabled at any

time through the date of the decision.  (*Id.*)

## II.  ANALYSIS

### A.  <u>Legal Standards</u>

#### 1.  **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *see* 42 U.S.C. § 405(g), 1383(C)(3).  Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence supports the Commissioner's decision.  *Greenspan*, 38 F.3d at 236.  A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision.  *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program.  *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985).  Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income.  *See id.*  Accordingly, the Court may rely on decisions in both areas, without distinction, when reviewing an ALJ's

decision.  *See id.*

### 2.  Standard for Disability Determination

To be entitled to social security benefits, a claimant must prove he or she is disabled as defined by the Social Security Act.  *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).  When a claimant's insured status has expired, the claimant "must not only prove" disability, but that the disability existed "prior to the expiration of [his or] her insured status."  *Anthony*, 954 F.2d at 295.  An "impairment [that] had its onset or became disabling after the special earnings test was last met cannot serve as the basis for a finding of disability."  *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. § 404.1520(b)–(f)) (currently 20 C.F.R. § 404.1520(a)(4)(i)–(v) (2012)).  Under the first four steps of the analysis, the burden lies with the claimant to prove disability.  *Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the medical vocational guidelines, by vocational expert testimony, or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  After the Commissioner fulfills this burden, the burden shifts back to the claimant to show that he cannot perform the alternate work.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  "A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis."  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### 3.  Standard for Entitlement to Benefits

Plaintiff asks the Court to reverse and remand the ALJ's the decision for an award of benefits.  (doc. 23 at 9.)  When an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits."  *Armstrong v. Astrue*, No. 1:08–CV–045–C ECF, 2009 WL 3029772, at * 10 (N.D. Tex. Sept. 22, 2009).  The claimant must carry "the very high burden of establishing 'disability without any doubt.'"  *Id.* at *11 (citation omitted).  Inconsistencies and unresolved issues in the record preclude an immediate award of benefits.  *Wells*

*v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005).  The Commissioner, not the court, resolves

evidentiary conflicts.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

## B.  Issues for Review

Plaintiff raises two issues for review:

1. The ALJ erred when finding Plaintiff's lumbar spine impairment did not meet the requirements of Listing 1.04A of the Regulations; and

2. The ALJ's finding that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform is not supported by substantial evidence.

## C.  Issue 1: Listed Impairment

Plaintiff argues that the ALJ committed reversible error by improperly concluding that he

did not meet Listing 1.04A for spinal disorders, and by failing to explain his conclusion.  (doc. 23

at 4.)

The listed impairments in the Social Security regulations "are descriptions of various

physical and mental illnesses . . . most of which are categorized by the body system they affect."

*Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990).  "Each impairment is defined in terms of several

specific medical signs, symptoms, or laboratory test results."  *Id*. at 530.  The claimant bears the

burden of proving that his impairments meet or equal the criteria found within the Listings.  *Henson*

*v. Barnhart*, 373 F. Supp. 2d 674, 685 (E.D. Tex. 2005) (citing *McCuller v. Barnhart*, 72 F. App'x

155, 158 (5th Cir. 2003)); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).  "For a claimant

to show that his impairment matches a Listing, it must meet *all* of the specified medical criteria."

*Id*.  (emphasis in original).  The criteria in the Listings are designed to be "demanding and

stringent."  *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).  This is because the Listings "were

designed to operate as a presumption of disability that makes further inquiry unnecessary."  *Zebley*,

493 U.S. at 532.  If a claimant fails to meet his burden, the ALJ's finding is supported by substantial evidence.  *Henson*, 373 F. Supp. at 685 (citing *Selders*, 914 F.2d at 620).

The decision of whether a claimant meets or equals a Listing is ultimately reserved to the Commissioner.  *Malone v. Colvin*, No. H-13-3043, 2015 WL 1291824, *14 (S.D. Tex. Mar. 16, 2015) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d) (2); Soc. Sec. Ruling 96–5p, 1996 WL 374183, at *2–3, 5 (S.S.A.1996); Soc. Sec. Ruling 96–6p, 1996 WL 374180, at * *3–4.)  The ALJ should, however, identify the listed impairment and explain how he or she determined that the symptoms were insufficiently severe to meet that listed impairment.  *See Audler*, 501 F.3d at 448.

### 1. Listing 1.04A

Plaintiff argues that he meets Listing 1.04A.  (doc. 23 at 4–7.)  Listing 1.04 provides for presumptive disability for spinal disorders, stating that a claimant will be found disabled if he has:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthrosis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . .

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04A.  "These physical findings must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation . . . ." *Id.* § 1.00D.  "Observations of the individual during the examination should be reported[,] e.g., how he gets on and off the examination table." *Id.* § 1.00E.  "Inability to walk on the heels or toes, to squat, or to arise from a squatting position . . . may be considered evidence of significant motor loss." *Id.*

Plaintiff cites to X-rays and CT scans performed in 2011 that revealed status post remote diskectomy and anterior interbody fusion, "disc space narrowing," and "central disc space protrusion" as evidence of a lumbar spine impairment. (*See* doc. 23 at 5.) For evidence of neuro-anatomic pain distribution, he cites to his reports in 2011 of back pain that radiated down to both legs. (*Id.* at 6.) He also cites to a physical examination on April 13, 2011, that showed his lumbar flexion was 50 degrees and his lumbar extension was 0 degrees, and an October 26, 2011 finding, as evidence that he had limitations in range of motion. (*Id.*) Finally, Plaintiff cites to evidence of three positive straight leg raising tests performed on April 13, 2011, October 26, 2011, and January 25, 2012. (R. at 234, 255, 260.)

Here, the ALJ concluded that Plaintiff did not "establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under Listing 1.04." (R. at 18.) He provided no further explanation of how he reached his conclusion that Plaintiff's symptoms did not meet the criteria of Listing 1.04 or point to any supporting medical evidence. His conclusory determination was error. *See Savoie v. Colvin,* No. 14-30-JJB-RLB, 2015 WL 1004217, *5 (M.D. La. Mar. 5, 2015) (citing *Audler*, 501 F.3d at 448); *Tribble v. Colvin*, 3:13-CV-2321-BF, 2014 WL 4805776, *3-4 (N.D. Tex. Sept. 29, 2014) (citing *Audler*).

### 2. Harmless Error

The Fifth Circuit has held that "[p]rocedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected. . . . The major policy underlying the harmless error rule is to preserve judgments and to avoid waste of time." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)) (per curiam). "[P]rocedural improprieties . . . will

14

therefore constitute a basis for remand *only if* such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Alexander v. Astrue*, 412 F. App'x 719, 722 (5th Cir. 2011) (emphasis added); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). The ALJ's error is harmless if the substantial rights of a party have not been affected. *See Alexander*, 412 F. App'x at 722. Court must therefore consider whether an ALJ's error in failing to discuss why he or she finds a claimant does not meet a Listing at step three was harmless. *See Audler*, 501 F.3d at 448 (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir.1988)) (applying harmless error analysis when the court ruled that the ALJ's failure to set out the bases for her decision at step three was erroneous).

Here, on March 26, 2011, a consultative examiner observed "no lumbrosacral spine fracture or dislocation" and a minimal degree of degenerative spondylosis at L1-L2. (R. at 235.) She determined that Plaintiff's muscle strength measured 5/5 in the upper left and upper right extremities with full range of motion, 4/5 in the bilateral quadriceps and hamstrings, and 4/5 in the bilateral calves, and that Plaintiff was able to partially squat, use his hands, and take off his shoes and socks without difficulty despite his back pain. (R. at 233-34.) Progress notes dated October 26, 2011, reflected that Plaintiff took ibuprofen for his pain, and his neurological system was negative for focal weakness. (R. at 254-55.) November 16, 2011 CT scans of Plaintiff's lumbar spine reflected no identifiable fractures or other significant bony lesions, no appreciable spinal stenosis, unremarkable paraspinous soft tissues, and no evidence of hardware failure or loosening. (R. at 251.) On January 24, 2012, Dr. Bolesta found that Plaintiff "could tiptoe and heel walk with minimal difficulties", had muscle strength of 5/5 in upper and lower extremities with gross intact sensation throughout, and "full range of motion of both cervical and lumbar spines." (R. at 260.)

15

The ALJ's finding that Plaintiff's spinal impairment did not meet Listing 1.04A is supported by substantial evidence, so Plaintiff's substantial rights were not affected. *See Alexander*, 412 F. App'x at 722. The ALJ's error in failing to explain how he concluded that his symptoms failed to meet the criteria of Listing 1.04 was harmless, so remand is not warranted on this basis.

**D.**     **Issue 2: Significant Number of Jobs**

Plaintiff argues that substantial evidence does not support the ALJ's step five finding that he retains the ability to perform other jobs in significant numbers in the national economy. (doc. 23 at 1, 7–9.) Specifically, he argues that the ALJ's hypothetical questions were defective because they failed to reasonably incorporate his inability to communicate in English. (doc. 23 at 7–9.)

To be considered disabled, a claimant must have a severe impairment that makes him unable to perform his previous work or any other substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1505(a). According to the Code of Federal Regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements [that a claimant is] able to meet with [his] physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b). It is the Commissioner's burden at step five to show that a claimant is capable of performing other gainful employment in the national economy. 20 C.F.R. § 404.1520(a)(4)(i); *Greenspan*, 38 F.3d at 236. Once the Commissioner finds that jobs in the national economy are available to a claimant, the burden of proof shifts back to the claimant to rebut this finding. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing *Fraga*, 810 F.2d at 1302).

*1.   Defective Hypothetical*

To establish that work exists for a claimant at step five of the sequential disability

determination process, the ALJ relies on the testimony of a VE in response to a hypothetical question[3] or other similar evidence, or on the Medical-Vocational Guidelines promulgated to guide this determination, often referred to as "the Grids." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. Pt. 404, Subpt. P, App. 2 (2008). A hypothetical question posed by an ALJ to a VE must reasonably incorporate all the claimant's disabilities recognized by the ALJ and the claimant must be afforded a fair opportunity to correct any deficiencies in the hypothetical question. *Bowling*, 36 F.3d at 436 436; *see also Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (citing *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002)). A claimant's failure to point out deficiencies in a hypothetical question does not, however, "automatically salvage that hypothetical as a proper basis for a determination of non-disability." *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001). The ALJ's failure to reasonably incorporate a claimant's disability into his or her hypothetical questions may render those questions defective if the disability severely limits the claimant's job prospects. *See Bridges v. Comm'r of Soc. Sec. Admin.*, 278 F. Supp. 2d 797, 806–07 (N.D. Tex. 2003). If, in making a disability determination, the ALJ relied on testimony elicited by a defective hypothetical question, the ALJ did not carry his burden of proof to show that a claimant could perform available work despite an impairment. *Boyd*, 239 F.3d at 708.

When a claimant is illiterate or unable to communicate in English, the ALJ's hypothetical question should define the claimant's educational level or English language proficiency. *Centeno v. Astrue*, No. EP–10–CV–00382–RFC, 2012 WL 728073, at *3–5 (W.D. Tex. Mar. 5, 2012). In

---

[3] "The ALJ relies on VE testimony in response to a hypothetical question because the VE 'is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Benton ex rel. Benton v. Astrue*, 3:12-CV-874-D, 2012 WL 5451819, at *7 (N.D. Tex. Nov. 8, 2012) (quoting *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir.2000)).

*Centeno*, the claimant testified via a Spanish interpreter that he was unable to read or speak English and "could not write more than his name in English." *Id.* at *3.  The ALJ asked the VE to consider which jobs a hypothetical person with the claimant's education could perform, and the VE identified the positions of office cleaner, cafeteria worker, and laundry press operator.  *Id.*  The ALJ subsequently found the claimant not disabled, determining that he "was able to communicate in *some* English" and perform substantial gainful activity in the national economy.  *Id.* at *5 (emphasis added).  The court held that the ALJ's failure to explicitly define the claimant's educational limitations rendered his question defective, noting that "[n]owhere in the record was it developed that [the claimant] could communicate in English to the degree necessary to satisfy the DOT criteria for the jobs the expert listed," which all required the ability to write and speak simple sentences. *Id.* at *3, 5.  The ALJ should have included in his hypothetical question that the claimant only able to communicate in "some" English or articulated what he meant by "some".  *Id.*  Because the ALJ failed to ask a hypothetical question that defined all of the claimant's limitations supported by the record, the court determined that the ALJ erred.  *Id.* at *5.[4]

Here, the ALJ asked the VE to opine whether a hypothetical person with Plaintiff's age, education, experience, and RFC could perform his past relevant work.  (R. at 53.)  The VE responded that he could not, but opined that such an individual could perform unskilled, light work by working other jobs existing in significant numbers in the national and local economies, e.g., the jobs of a racker, bottling line attendant, or bagger.  (R. at 53–54.)  The ALJ concluded that Plaintiff

---

[4]  The court found that viewed in light of the entire record, a Pain Report submitted by the claimant indicating that he understood English did not constitute substantial evidence to support the ALJ's finding that Plaintiff could communicate in some English.  *Id.* at *4. It noted that "[n]ot only is the Pain Report form not entirely clear as to what information it seeks, other evidence in the record strongly suggests that it was not Plaintiff who wrote the responses in English on that form."  *Id.*

was "able to communicate in English" and perform other jobs existing in significant numbers in the national economy. (R. at 22.)[5]

Plaintiff's application for benefits noted that he could not speak, read, or understand English. (R. at 167). His medical records listed his "Language" as Spanish, and he never indicated that he could write in English. (R. at 167, 247.) He testified at the hearing via a Spanish interpreter. (R. at 32.) No evidence was presented to the contrary. The ALJ did not explicitly define Plaintiff's educational limitations in his hypothetical, and the VE did not address the educational or language level required for the jobs of racker (DOT # 524.687-018, SVP:1), bottling line attendant (DOT # 920.687-042, SVP:1), or bagger (DOT # 920.687-018, SVP:1). According to the DOT, these jobs require a Language Level 1 proficiency, i.e., that a person have the skills to speak and write simple sentences, recognize the meaning of 2,500 (two-or three-syllable) words, and read at a rate of 95–120 words per minute. *See* DOT 524.687-018; 920.687-042; 920.687-018. This level of language proficiency deviates from Plaintiff's language limitations. Nowhere in the record was it developed that Plaintiff could communicate in English to the degree necessary to perform any of these jobs. *See Centeno*, 2012 WL 728073, at *5. By failing to incorporate Plaintiff's illiteracy or inability to communicate in English into his hypothetical questions, the ALJ erred. *See id.*

### 2. Harmless Error

As noted, an ALJ's error is harmless if the substantial rights of a party have not been affected. *See Alexander*, 412 F. App'x at 722. The Court must therefore consider whether the ALJ's

---

[5] The Commissioner contends that this finding was a "typographical error on the ALJ's part as the fact that [Plaintiff] required a translator was convincing evidence that he did not speak English." (Doc. 24 at 7.) She also notes, however, that the ALJ also stated that he relied on Medical-Vocational Rule 202.18 (at least literate and able to communicate in English) as a guideline. *Id.* Citation to this rule suggests that the ALJ's finding was not a typographical error.

error in relying on the VE's answer to a hypothetical question that did not define all of the claimant's limitations supported by the record, including his language limitations, at step five was harmless. *See Centeno*, 2012 WL 728073, at *3–5 (citing *Bowling*, 36 F.3d at 436); *Audler*, 501 F.3d at 448.

Here, the Commissioner argues that the ALJ's error in finding that Plaintiff able to communicate in English was harmless because under Medical-Vocational Rule 202.16, he "would still be found 'not disabled'" even if he was illiterate or unable to communicate in English. (doc 24 at 7.) "A claimant is not per se disabled if he or she is illiterate." *Pinto v. Massanari*, 249 F.3d 840, 843, 847 (9th Cir. 2001). As noted in *Centeno,* however, "[t]he regulations require the ALJ to evaluate a claimant's ability to speak, understand, and read and write in English when evaluating what work the claimant could perform." 2012 WL 728073, at *5, citing 20 C.F.R. § 404.1564(b)(6). Even if the ALJ understood that Plaintiff was illiterate and unable to communicate in English, the record does not reflect a finding that he could communicate in English to the degree necessary to perform any of the jobs listed by the VE, or any explanation for the deviation between the language requirements for those jobs and the limitations conceded by the Commissioner. The ALJ's decision that Plaintiff could perform other jobs existing in significant numbers in the national economy therefore affected Plaintiff's substantial rights. The error is not harmless, and remand is warranted. *See Centeno*, 2012 WL 728073, at *5; *see also Suarez v. Colvin*, 1:13-cv-198-BAM, 2015 WL 351424 (E.D.Ca. Jan. 23, 2015) (remanding for further proceedings because the ALJ took into account the claimant's English-language illiteracy but failed to incorporate that limitation in the hypothetical question, and the jobs cited by the VE required a Language Level 1 proficiency that deviated from the claimant's noted language limitations) (citing *Pinto*, 249 F.3d at 843).

20

### III.CONCLUSION

The Commissioner's decision is **REVERSED**, and the case is **REMANDED** for reconsideration.

**SO ORDERED on this 31st day of March, 2015.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

21